**FRITSCHLER, PELLINO, SCHRANK & ROSEN, S.C., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 86–C–1328.

United States District Court, E.D. Wisconsin.

Sept. 22, 1988.

On Motion to Alter or Amend Judgment July 18, 1989.

James M. Shellow, Shellow, Shellow & Glynn, Milwaukee, Wis., William H. Theis, Chicago, Ill., for plaintiff.

Jeffrey D. Snow, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Nathan Fishbach, Asst. U.S. Atty., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

REYNOLDS, Senior District Judge.

### FINDINGS OF FACT

1. Plaintiff Fritschler, Pellino, Schrank & Rosen, S.C. is a law firm located in Madison, Wisconsin. Two of plaintiff's partners are Bruce Rosen who, since no later than 1982, has specialized in criminal trial work, and Charles E. Pellino, Jr., who, since no later than 1984, has dealt with federal tax matters and has been authorized to practice before the Internal Revenue Service ("IRS"). The defendant is the United States of America appearing on behalf of the IRS.

2. At some time in 1981, Alan J. Casey ("Casey") learned that he was the target of a federal grand jury investigation and became a client of the plaintiff.

3. In 1982, Casey delivered certain oriental rugs into the physical possession of the plaintiff as security for the payment of legal fees and out-of-pocket expenses. Casey and plaintiff agreed that these rugs would secure the payment of any future fees and expenses owed to the plaintiff. Plaintiff took and kept sole possession of these rugs and never released them until 1986, when plaintiff surrendered these rugs to the IRS pursuant to an IRS levy. Casey has not had physical possession of these rugs since 1982.

4. During the year 1985, as well as after the year 1985, Casey was a resident of Broward County, Florida. Although Casey owned real estate in the state of Wisconsin, Casey was not a Wisconsin resident at any time during the year 1985.

5. In May and/or June, 1985, Casey, in order to obtain future legal services from Attorney James M. Shellow, furnished at least $65,000 in cash to Shellow, Shellow & Glynn, a law firm located in Milwaukee, Wisconsin. From that time on, Shellow, along with plaintiff, were involved in Casey's legal representation.

6. On August 3, 1985, Casey was indicted by a federal grand jury in the Eastern District of Wisconsin. Casey was arraigned on these charges on August 23, 1985.

7. Between 1981 and 1985 plaintiff performed various legal services on behalf of Casey in both civil and criminal matters, including representation of Mr. Casey during the grand jury investigation.

8. After the indictment was filed, but before the arraignment, Casey met with Bruce J. Rosen, and they agreed that plaintiff would represent Casey in his federal criminal trial and in a civil tax trial. In return for this future representation, as well as in payment for services previously rendered, Casey agreed to pay plaintiff a nonrefundable fee of $75,000.

9. The agreement between plaintiff and Casey was that, in return for the nonrefundable fee, plaintiff would perform to completion, as desired by Casey, all necessary work on the criminal and the civil cases. Further, the fee was in all respects nonrefundable. Had Casey pleaded guilty or discharged plaintiff before the completion of the agreed upon representation, no refund would be due plaintiff even though, in those instances, plaintiff might have performed less work than plaintiff had agreed to perform.

10. On August 23, 1985, Bruce J. Rosen, relying on plaintiff's agreement with Casey, appeared at Casey's arraignment, entered an appearance, and secured Casey's release on a bond that permitted Casey to remain in residence in the state of Florida. After the arraignment, an IRS revenue officer handed Casey a stack of papers which included a "Notice of Jeopardy Assessment and Right to Appeal."

11. Casey handed these papers to Rosen, who, not familiar with jeopardy assessments, later transferred the papers to his law partner, Charles E. Pellino, Jr.

12. The papers did not include a notice of deficiency. This document was mailed by the IRS to the plaintiff some two months after August 23, 1985.

13. On August 23, 1985, the IRS filed notices of a tax lien against an Alan J. Casey in Dane County, Wisconsin, and Milwaukee County, Wisconsin.

14. On August 29, 1985, the IRS filed a notice of tax lien against an Alan G. Casey (emphasis added) in Broward County, Florida.

15. On September 9, 1985, Casey paid $75,000 in cash to Bruce J. Rosen in compliance with plaintiff's prior fee agreement with plaintiff.

16. At the time of receiving this payment, neither Bruce Rosen nor Charles Pellino had any knowledge or notice that there was a tax lien against Casey. Rosen and Pellino did not know that a notice of tax lien had been filed against Casey in Dane County, Wisconsin, or Milwaukee County, Wisconsin. Rosen and Pellino were also not aware of any filing against an Alan G. Casey in Broward County, Florida. Neither Rosen nor Pellino saw a notice of tax lien as to Alan J. Casey until the government had instituted its counterclaim in the instant suit.

17. Of the $75,000 Casey paid to plaintiff, $10,000 was immediately divided in cash among plaintiff's shareholders. The remaining $65,000 was deposited into the plaintiff's general expense checking account, in which plaintiff deposited income and out of which plaintiff paid expenses. None of the $75,000 was ever placed in plaintiff's trust account. Because of the plaintiff's agreement with Casey, the $75,000, upon tender, was earned and nonrefundable.

18. On September 13, 1985, plaintiff filed a currency transaction report (Form 8300) with the IRS. The form reflected the fact that plaintiff had received $75,000 in currency from Casey.

19. On November 20, 1985, IRS Revenue Officer Michael Ryan visited plaintiff's offices and delivered a notice of levy, which called for plaintiff to deliver over to the IRS all property belonging to Alan J. Casey. As of November 20, 1985, Ryan did not know that plaintiff had filed a Form 8300; however, Ryan did know that plaintiff had banked $65,000. Suspecting that this money may have originated from Casey, Ryan reminded Pellino and Rosen that plaintiff must file a Form 8300, a blank version of which he offered them, and, further, that they must surrender any property of Alan J. Casey held by plaintiff.

20. Pellino and Rosen informed Ryan that plaintiff had filed the appropriate Form 8300 for whatever money had been received from Casey. Moreover, they informed Ryan that whatever money plaintiff had received from Casey was not the property of Casey. Pellino and Rosen stated that the cash was an earned fee, solely the property of plaintiff as of the date of its tender by Casey. Pellino and Rosen informed Ryan that, for that reason, plaintiff would not release any cash previously tendered by Casey in payment of plaintiff's fee. Ryan told Rosen and Pellino that they could retain whatever currency Casey might pay plaintiff as a fee after November 20, 1985.

21. As of November 20, 1985, if not earlier, the entire $75,000 had been disbursed by plaintiff, and none of that fee was in plaintiff's possession.

22. After Mr. Ryan's visit, plaintiff sought a legal opinion from Professor Frank Tuerkheimer, a professor at the University of Wisconsin Law School and a former United States Attorney. Plaintiff knew that it retained Casey's rugs, but feared that disclosure of that fact in compliance with the levy might impair Casey's defense to the criminal charges and thereby constitute a violation of professional ethics.

23. On November 26, 1985, the IRS filed in Dane County, Wisconsin, a notice of release of federal tax lien against Alan J. Casey. This notice of release was actually recorded on December 4, 1985. Later that day (December 4), the government filed a new notice of tax lien against Alan J. Casey in Dane County, Wisconsin, and this new notice of tax lien was not recorded until December 10, 1985.

24. On January 21, 1986, after receiving the advice of Professor Tuerkheimer, plaintiff, by letter, informed Agent Ryan that plaintiff possessed some property of Alan J. Casey. Plaintiff indicated that it held the property as security for unpaid legal fees and proposed that plaintiff retain the property or its proceeds unless and until the notice of levy were withdrawn.

25. On February 10, 1986, Agent Ryan served an Internal Revenue Service Notice of Final Demand upon plaintiff.

26. By a document dated April 4 and 8, 1986, the plaintiff and the IRS reached an agreement similar to the terms originally suggested by plaintiff. At no time did plaintiff say or imply to the IRS that it was holding any cash belonging to Alan J. Casey. Plaintiff had already filed a Form 8300 to report the $75,000 cash payment. At all times, plaintiff represented that the unidentified property was a commodity or object. For that reason, plaintiff agreed to maintain the property and to insure it. Likewise, plaintiff always referred to the property or its "proceeds," a meaningless reference if plaintiff had been dealing with cash. In one conversation, either Mr. Rosen or Mr. Pellino represented to Agent Ryan that the value of the unidentified property might fluctuate over time. Following Casey's criminal trial, in November of 1986, plaintiff revealed to the IRS that it was holding oriental rugs belonging to Casey. The April 4 and 8, 1986 agreement referred solely to the oriental rugs, not to the $75,000 in cash.

27. In the fall of 1986, plaintiff defended Casey through a three-week jury trial before Judge Evans in the Eastern District of Wisconsin. Plaintiff also completed representation of Casey in a civil tax case in the United States Tax Court.

28. In November of 1986, plaintiff turned Casey's rugs over to the IRS, and these rugs were sold by the IRS at public auction for $28,788.

## CONCLUSIONS OF LAW

1. This court's jurisdiction over this action arises under Sections 1340, 1345 and 1346 of Title 28 of the United States Code.

2. Under 26 U.S.C. § 6323(a), a "purchaser" (to use the statutory term) of a taxpayer's property takes the property free of any tax lien if there is no validly filed notice of tax lien at the time of purchase. Section 6323(f) sets out detailed, requirements for the filing of a notice of tax lien.

3. By giving its irrevocable promise to represent Casey and by actually rendering legal services to Casey before September 9, 1985, plaintiff became a "purchaser" of Alan J. Casey's $75,000, as that term is defined under 26 U.S.C. § 6323(h)(6).

4. On September 9, 1985, when plaintiff received the $75,000 from Casey, the government did not have a validly filed notice of tax lien. To charge Alan J. Casey's personal property, including his cash, with a tax lien, the government was obliged to file a proper notice of tax lien in Broward County, Florida, because Casey was a Florida resident. The government's filing of a notice of tax lien in Broward County, Florida, under the name of Alan G. Casey was not in compliance with the statute.

5. Even if the filing of a notice of tax lien which misspells the taxpayer's name does not make the notice ineffective, 26 U.S.C. § 6323(b)(1) protects a purchaser of "securities" including cash when the purchaser has no actual knowledge or notice of the existence of the lien. Under 26 U.S.C. § 6323(i), the relevant knowledge is the knowledge of the person conducting the transaction. Moreover, the government bears the burden of proving the actual knowledge of or notice to the purchaser.

6. As of September 9, 1985, plaintiff had no knowledge or notice that a tax lien existed as to Alan J. Casey and, therefore, the plaintiff had a superior right to the cash pursuant to section 6323(b)(1).

7. The government's counterclaim seeks the return of the $75,000 in cash. Even if there were a valid tax lien, plaintiff cannot be required to turn over what it does not have. As of November 20, 1985, the date of the levy, plaintiff no longer had the cash tendered by Casey.

8. The government argues that tortious conversion is an alternative theory

under which the government can recover the $75,000. Section 6332 of Title 26 of the United States Code provides the government's sole remedy for recovery. The government may seek to recover property in the hands of a third party if the government can establish that the property has a valid lien against it, but the government may not seek a common-law remedy for conversion. Conversion is outside the scope of section 6332, and would require the court to create or imply a remedy that Congress could have created had it been of a mind to do so.

■ 9. Even if the court were to broaden the government's remedies and allow a common-law action for conversion, such an action would not lie on these facts. Conversion requires a knowing and intentional interference with another's property rights. Plaintiff, in receiving cash, had no knowledge that it was interfering with a claimed or an actual right to Alan J. Casey's cash.

10. In light of this court's determination that the IRS does not have a claim to the $75,000 Casey paid to the plaintiff, plaintiff has been paid all that was owed to it by Alan J. Casey. Accordingly, there is no debt to be satisfied from the plaintiff's security interest in the oriental rugs, and their proceeds may be retained by the government in payment of whatever tax debts Alan J. Casey may owe to the government.

■ 11. Were the government to have prevailed on its claim to the $75,000, the court would have awarded the proceeds from sale of the the rugs to plaintiff. Once plaintiff took a pledge of the rugs in 1982, plaintiff had a perfected security interest in the rugs under Wisconsin law. Wis.Stat. § 409.305. Plaintiff's security interest in the rugs was superior to any claimed tax lien allegedly arising in 1985. If plaintiff were obliged to return the $75,-000, then plaintiff would not have been paid for its representation of Casey, and plaintiff would have been entitled to take payment from its security.

IT IS THEREFORE ORDERED that judgment be entered in favor of the plaintiff and against the defendant as to all claims asserted in this action.

IT IS FURTHER ORDERED that since plaintiff has been paid in full for its services to Casey, defendant may retain the proceeds from the sale of Casey's oriental rugs.

### ORDER

On Motion To Alter or Amend Judgment

On September 22, 1988, following a trial to the court, the court issued findings of fact, conclusions of law and an order in the above-captioned action. The court entered a judgment in favor of the plaintiff on all claims alleged. Presently before the court is defendant's motion to alter or amend the judgment. Plaintiff has opposed the motion. The court has considered the parties' positions and will deny defendant's motion to amend the judgment.

Defendant's motion asks this court to reconsider its findings of fact, and to find that plaintiff had actual or constructive notice of the government's notice of tax lien filed in Broward County, Florida, on August 29, 1985. The court will not amend its findings of fact and, therefore, the judgment will not be amended.

The court found that plaintiff did not have actual notice of the government's tax lien. This finding is based on this court's evaluation of the testimony and credibility of the witnesses at trial, and will not be disturbed. The court also found that plaintiff did not have constructive notice of the government's tax lien. The government filed a tax lien against an Alan *G.* Casey, when the taxpayer in this case was Alan *J.* Casey. (emphasis added). The government argues that the error was minor and a reasonably prudent person conducting a search of the tax lien index in Broward County, Florida would have realized the notice was directed against Alan J. Casey.

Courts have reached different conclusions concerning whether a reasonably prudent person would have constructive notice of a tax lien which is filed with some misspelling or other error. *See e.g. Haye v. United States,* 461 F.Supp. 1168 (C.D.Cal. 1978); *Continental Investments v. United States,* 142 F.Supp. 542 (W.D.Tenn.1953); *United States v. Jane B. Corp.,* 167 F.Supp. 352 (D.Mass.1958); *Richter's Loan*

1162

*Co. v. United States,* 235 F.2d 753 (5th Cir.1956). All of these cases have depended on the court's evaluation of the facts before it.

In the present case, the government failed to support its assertion that a reasonably prudent person conducting a tax lien search in Broward County, Florida would have realized that Alan G. Casey was really Alan J. Casey. The government presented no evidence on how tax liens are indexed in Florida or what, if any, information is included with the taxpayer's name. The court will not disturb its finding that plaintiff did not have constructive notice of the tax lien against Alan J. Casey.

The defendant's challenges to the legal conclusions reached by this court depend on this court changing its factual findings. Because the court will not disturb its findings of fact, defendant's motion to alter or amend the judgment will be denied.

IT IS THEREFORE ORDERED that defendant's motion to alter or amend the judgment is denied.