**WHITING–TURNER/A.L. JOHNSON, a Joint Venture, Plaintiff,**

v.

**P.D.H. DEVELOPMENT, INC., United States of America, and Athens First Bank & Trust Company, Defendants.**

No. 3:98–CV–107(DF).

United States District Court, M.D. Georgia, Athens Division.

March 21, 2000.

Curtis William Martin, William Garth Snider, Griffin, Cochrane & Marshall, Atlanta, GA, for Whiting–Turner/A.L. Johnson, a Joint Venture, a Joint Venture, plaintiffs.

Thomas H. Rogers, Jr., Athens, GA, for Athens First Bank and Trust Co., defendant.

Vicki R. Crowell, Macon, GA, Ann Reid, Department of Justice, Washington, DC, for U.S.A., defendant.

## ORDER

FITZPATRICK, District Judge.

Whiting–Turner/A.L. Johnson ("Whiting–Turner") initiated this lawsuit in the Superior Court of Clarke County by filing a complaint in interpleader, as amended, in which it seeks to determine entitlement to $26,330.14 that it is obligated to pay P.D.H. Development, Inc. ("PDH") as compensation for work performed on the University of Georgia Animal Science Complex. Whiting Turner named three defendants to the action: (1) PDH; (2) Athens First Bank & Trust Company ("Athens First"); and (3) the United States of America. The complaint for interpleader was filed pursuant to 28 U.S.C. § 2410, in which the United States waived its sovereign immunity for interpleader actions involving tax liens. The United States subsequently removed the case to federal court pursuant to 28 U.S.C. § 1444, which allows the United States to remove any action brought in state court against the United States under § 2410 to the district court. This matter is now before the Court on cross-motions for summary judgment filed by the United States and Athens First.

## I. STATEMENT OF FACTS

On August 9, 1996, Whiting–Turner entered into a subcontract (the "Subcontract") with PDH to perform all of the grading and site utilities work on a project known as the University of Georgia Animal Science Complex (the "Project"). In subsection (b) of Article 5 of the Subcontract, PDH agreed to submit to Whiting–Turner applications for payment by the fifteenth of each month, or as otherwise provided in the contract documents, so as to enable Whiting–Turner to apply for payment from the Project owner. Subsection (a) of Article 5 of the Subcontract provides for payment of the contract

amount as follows: Whiting–Turner was obligated to pay PDH an amount equal to ninety percent (90%) of the value of the work performed as determined by the architect and approved by the construction manager during any calendar month within fifteen (15) days after payment therefore was received by the construction manager from the owner of the project or within such time as specified by law. Additionally, the contract provides that

> Retainage and any other balance of the Contract Amount shall be payable within fifteen (15) days ... after the work under this Agreement has been completed and accepted by Owner, Architect, and [Whiting–Turner] and following approval by the Architect of the final application for payment and settlement of all claims, if any under this Agreement, provided that Trade Contractor has fully performed all of its obligations hereunder.

Article 5(a) of the Subcontract.

On July 18, 1997, Whiting–Turner declared PDH to be in default under the Subcontract. Whiting–Turner terminated the Subcontract and PDH ceased all work on the Project as of July 18, 1997. The amount due and owning PDH for the services it performed on the Project is $26,330.14.

Two independent parties, Athens First and the United States, claim an interest in the money owed to PDH under the Subcontract. PDH has not claimed an independent entitlement to any portion of the fund involved in this case or indicated its support for either of the two claims of entitlement.

Athens First's claim is premised on its security interest in all of PDH's accounts receivable. Over a period of several years, Athens First advanced loans and funds to PDH. PDH executed numerous promissory notes, security agreements, and UCC–1 financing statements granting a security interest in all of PDH's accounts receivable to Athens First (Aff. of A. Middleton Ramsey (tab # 22), paras. 3 & 4; Exhibits D, E, F, I, J, K, O, and Q). On February 10, 1994, Athens First filed a UCC–1 financing statement to perfect its interest in "All Furniture, Fixtures, Equipment, Accounts Receivable and General Intangibles now or hereafter existing or created" (Aff. of A. Middleton Ramsey (tab # 22), Exhibit O). Athens First filed a second UCC–1 financing statement, covering "All Furniture, Fixtures, Equipment, Inventory, Accounts Receivable and proceeds thereof, all General Intangible instruments, chattel paper and cash of P.D.H. Development, Inc. now owned or hereinafter acquired or created," on June 8, 1995 (Aff. of A. Middleton Ramsey (tab # 22), Exhibit Q). Athens First has not advanced any loans or funds to P.D.H. since August 4, 1995 (Aff. of A. Middleton Ramsey (tab # 22), para. 5). As of January 31, 1997, the balance owed by PDH to Athens First was $345,678.90 principal and $41,338.45 interest (Aff. of A. Middleton Ramsey (tab # 22), para. 6).

The United States' interest is premised on assessments made by the Internal Revenue Service ("IRS") against P.D. Hill Development, Inc.[1] On July 15, 1996, the IRS made assessments against P.D. Hill Development, Inc. for $12,873.12 in unpaid Form 941 liabilities for the fourth quarter of 1995 (Athens First's Mot. for Summ. J. (tab # 19), Exhibit BB). On January 31, 1997, the IRS filed a Notice of Federal Tax Lien against "PD Hill Development Inc, a corporation DBA Phoenix Pipe & Dirt" in the Clarke County, Georgia Superior Court Clerk's Office (Athens First's Mot. for Summ. J. (tab # 19), Exhibit BB).

---

**1.** P.D.H. Development, Inc. and P.D. Hill Development, Inc. are the same entity (Supplemental Decl. of Paul Dennis Hill (tab # 41), para. 2).

Samuel Elliot, a revenue officer with the IRS in Athens, Georgia, asserts that the "balance of P.D. Hill Development's Form 941 liabilities for the fourth quarter of 1995 as of May 3, 1999, is $23,592.51" (Decl. Of Samuel W. Elliot, para. 5, attached as Exhibit 3 to the United States' Statement Of Material Facts Not In Dispute (tab # 27)).

## II. MOTIONS TO STRIKE

Athens First has objected to, and moved to strike, the affidavits of Paul Dennis Hill and Samuel W. Elliot, which the United States presented in support of its motion for summary judgment (Mot. to Strike Unsworn Decl. of Paul Dennis Hill (tab # 31); Mot. to Strike Unsworn Decl. of Samuel W. Elliot (tab # 33); Mot. to Strike Supplemental Decl. of Paul Dennis Hill and Renewed Mot. to Strike Decl. of Paul Dennis Hill (tab # 42); Mot. to Strike Supplemental Decl. of Samuel W. Elliot and Renewed Mot. to Strike Decl. of Samuel W. Elliot (tab # 44)). In an effort to cure the objectionable portions of the declarations, the United States filed a Supplemental Declaration of Paul Dennis Hill (tab # 41) and a Supplemental Declaration of Samuel W. Elliot (tab # 37) following Athens First's initial motions to strike. Given that the United States was able to address many of Athens First's concerns through the supplemental declarations, the Court considers the first motions to strike to be moot and will now address the issues raised in Athens First's motions to strike the supplemental declarations.

In order for the supplemental declarations to be used as summary judgment proof, they must be sworn and meet the requirements of Federal Rule of Civil Procedure 56(e). The unsworn declarations submitted by the United States are of the same force and effect as sworn affidavits because both were made under penalty of perjury and verified as true and correct.

28 U.S.C. § 1746. Rule 56(e) also requires that

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed.R. Civ.P. 56(e).

With respect to the Supplemental Declaration of Paul Dennis Hill, Athens First objects to paragraph 5, in which Mr. Hill states that "[i]t is well known in the community of Clarke County that 'P.D. Hill Development, Inc.' and 'P.D.H. Development, Inc.' are the same corporation. It is known by all banks, suppliers and construction contractors in the community." In his declaration, Mr. Hill states that, as the president of "P.D. Hill Development, Inc. a/k/a P.D.H. Development, Inc." (para.2), he has operated his construction business in Clarke County under these names since 1989 (para.3). Mr. Hill also states that, as an agent for his construction business, he has dealt with every major bank, supplier of materials, and contractor in Clarke County (para.4). Based on Mr. Hill's extensive business dealings in Clarke County, perhaps the Court, or a jury at trial, could reasonably infer that the banks, suppliers and construction contractors in the community do know that "P.D. Hill Development, Inc." and "P.D.H. Development, Inc." are the same corporation. However, a reasonable inference based on specific admissible facts is different from Mr. Hill's affirmative statement as to what he believes is known in the community. As Mr. Hill's statements as to what is known in the community would not be admissible in evidence, the Court

hereby strikes paragraph 5 of the Supplemental Declaration of Paul Dennis Hill pursuant to Rule 56(e).

▪ Athens First also objects to parts of the Supplemental Declaration of Samuel W. Elliot. First, Athens First objects to Mr. Elliot's statements regarding the application for employer identification number filed in the name of "P.D. Hill Development, Inc." (para.3). Athens First argues that these statements are hearsay and thus would not be admissible at trial. Specifically, Athens First objects to the second sentence of paragraph 3, which provides that "[t]he name 'P.D. Hill Development, Inc.,' used by the Internal Revenue Service, is derived from the application for employer identification number filed by the taxpayer." The application for employer identification number, rather than Mr. Elliot's testimony about the contents of the application, would be the best evidence of the application's contents at trial. *See* Fed.R.Evid. 1002. As Mr. Elliot's testimony about the contents of the application would not be admissible at trial and a sworn or certified copy of the application is not attached to Mr. Elliot's declaration, the Court will strike the second sentence of paragraph 3 concerning the application for employer identification number.

Athens First also objects to the second sentence of paragraph 6, which states that "[t]he balance of P.D. Hill Development's Form 941 liabilities for the fourth quarter of 1995 as of May 3, 1999, is $23,592.51." As he is the revenue officer assigned to collect PDH's tax liabilities, Mr. Elliot is certainly competent to testify about the tax liabilities of PDH as a matter within his personal knowledge. The Court agrees, however, that a proper foundation would have to be laid for this testimony to be admissible at trial. However, the Court does not deem it necessary to strike this portion of Mr. Elliot's declaration any

more than it deems it necessary to strike the portion of A. Middleton Ramsey's affidavit stating that the amount PDH was indebted to Athens First on January 31, 1997 is $345,678.90 principal and $41,338.45 interest. Thus, for purposes of the United States' motion for summary judgment, the Court will accept that PDH owes the United States a sum of money for its Form 941 liabilities for the fourth quarter of 1995. If necessary, the precise amount of money owed for PDH's Form 941 liabilities can be determined after the Court determines which of the parties is entitled to the $26,330.14 that Whiting–Turner is obligated to pay PDH.

## III. CROSS–MOTIONS FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *Edwards v. Shalala,* 64 F.3d 601, 603 (11th Cir.1995). If the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

In reviewing a motion for summary judgment, the court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *See Maynard v. Williams,* 72 F.3d 848, 851 (11th Cir.1996). Even if there exists some alleged factual dispute between the parties, summary judgment is not necessarily improper; there must be a genuine issue of *material*

fact to render summary judgment improper. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## B. Priority of Athens First's Security Interest to the Federal Tax Lien

■ Under the Internal Revenue Code, a tax lien arises at the time of assessment, 26 U.S.C. § 6322, on "all property and rights to property, whether real or personal, belonging to" a delinquent taxpayer, 26 U.S.C. § 6321. The lien also attaches to property acquired by the delinquent taxpayer after the initial imposition of the lien. *See, e.g., Glass City Bank v. United States*, 326 U.S. 265, 268, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945). A tax lien is not valid as against any holder of a security interest under the Federal Tax Lien Act "until notice thereof which meets the requirements of subsection (f) has been filed." 26 U.S.C. § 6323(a); *see also United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963). The United States' lien commenced no sooner than January 31, 1997, the date on which the IRS filed a Notice of Federal Tax Lien against "PD Hill Development Inc, a corporation DBA Phoenix Pipe & Dirt" in the Clarke County, Georgia Superior Court Clerk's Office. *See United States v. McDermott*, 507 U.S. 447, 449, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993).

Athens First argues that its security interest is senior to the federal tax lien under § 6323(a) because it possessed a perfected security interest in PDH's accounts receivable prior to the Internal Revenue Service's filing of notice of the tax lien. In order to come within the protections of § 6323(a) as a holder of a security interest, both parties agree that Athens First must establish the four conditions set out by the Court of Appeals in *Atlantic States Constr., Inc. v. Hand, Arendall, Bedsole, Greaves & Johnston*, 892 F.2d 1530 (11th Cir.1990). The four conditions are:

(1) that the security interest was acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss; (2) that the property to which the security interest was to attach was in existence at the time the tax lien was filed; (3) that the security interest was, at the time of the tax lien filing, protected under state law against a judgment lien arising out of an unsecured obligation; and (4) that the holder of the security interest parted with money or money's worth.

*Id.* at 1535 (citing 26 U.S.C.A. § 6323(h)(1)).

Athens First maintains that the four conditions are met in this case. First, Athens First's security interest was acquired through the security agreements executed by PDH for the purpose of securing payment for the substantial funds it advanced to PDH. Second, Athens First contends that the property to which the security interest was to attach, the accounts receivable, were in existence at the time the tax lien was filed. Third, Athens First's security interest was protected under Georgia law by virtue of O.C.G.A. § 11–9–310(a) against a judgment lien arising out of an unsecured obligation. Finally, Athens First satisfies the fourth condition because, by advancing substantial funds to PDH, Athens First "parted with money or money's worth."

In response, the United States recognizes that Athens First "has met conditions (1), (3), and (4), of the requirements of a security interest." (Mem. of Law of United States of America (tab # 26), p. 6). The United States argues, however, that Athens First has not met the second condition. In support of this argument, the United States argues that federal law,

rather than the state law relied on by Athens First, determines when an account receivable comes into existence. Although state law determines the nature of the legal or property interest of the entity with the competing lien, the United States asserts that, in the case of a federal tax lien, the priority of competing liens is a province of federal law. *See Aquilino v. United States,* 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). The difficulty faced by the Court when applying this principle to the facts of this case, however, is that the characterization of when an account receivable is in existence differs significantly under Georgia law and the Treasury Regulations. Moreover, the Treasury Regulations appear to require that the federal definition control over an inconsistent state definition when the case involves a federal tax lien.

Under the Uniform Commercial Code, as adopted by the Georgia legislature, an "account" in the sense if collateral is defined as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." O.C.G.A. § 11–9–106. A security interest does not attach unless: (1) the debtor has signed a security agreement which contains a description of the collateral; (2) value has been given; and (3) the debtor has rights in the collateral. O.C.G.A. § 11–9–203(1). A security in accounts may be perfected by filing a financing statement. O.C.G.A. § 11–9–302(1). If steps are taken to perfect the security interest before the security interest attaches, the security interest is perfected at the time when it attaches. O.C.G.A. § 11–9–303(1).

Applying these principles to this case, the debtor, PDH, signed several security agreements which granted the secured party, Athens First, a security interest in the collateral described, in part, as "All

Accounts Receivable, ... now owned or hereinafter existing" (Aff. of A. Middleton Ramsey (tab # 22), Exhibits D, E, F, I, J, & K). In addition, Athens First gave value for the security interest when it advanced loans and funds to PDH. Even though Athens First took steps to perfect its security interest by filing financing statements, Athens First's security interest did not attach until PDH had rights in the collateral.

Athens First argues that, under Georgia law, the account at issue arose upon the signing of the Subcontract on August 9, 1996, when PDH acquired a right to payment under the Subcontract, even though that right to payment had not yet been earned by performance. Following this analysis, Athens First security interest attached to PDH's right to payment for services rendered on August 9, 1996, and, because it previously took steps to perfect its security interest by filing financing statements on February 10, 1994 and June 8, 1995, Athens First's security interest was perfected as of August 9, 1996. Because the account receivable to which the security interest was to attach was in existence at the time the tax lien was filed, the second condition of *Atlantic States* is satisfied. As a result, if the Court applies the law as suggested by Athens First, Athens First's security interest has priority over the federal tax lien.

The United States argues that, although state law characterizes the property at issue, federal law applies to determine when that property interest, *i.e.,* the account receivable, came into existence. Under the applicable Treasury Regulations, an account receivable, defined as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper" (Treas.Reg. § 301.6323(c)–1(c)(2)(ii)), "is in existence when, and to the extent, a right

to payment is earned by performance." Treas. Reg. § 301.6323(h)–1(a)(1). Furthermore, the regulations require that

A security interest must be in existence within the meaning of this paragraph, at the time as of which its priority against a tax lien is determined. For example, to be afforded priority under the provisions of paragraph (a) of § 301.6323(a)–1 a security interest must be in existence within the meaning of this paragraph before a notice of lien is filed.

Treas. Reg. § 301.6323(h)–1(a)(1). The language of this Treasury Regulation supports the Government's contention that, despite any provision of Georgia law to the contrary, Athens First's security interest must have been in existence in the federal sense for Athens First to benefit from the protections of § 6323(a). Thus, PDH's accounts receivable did not come into existence until PDH earned the right to payment under the Subcontract by performance.

Without conceding that federal law determines when PDH's accounts receivable came into existence under the Subcontract, Athens First argues that the account receivable existed for purposes of federal law prior to the filing of the federal tax lien because PDH earned the right to payment of substantial funds by performance prior to January 31, 1997. Apparently, Athens First bases this argument, in part, on the portions of the Subcontract which provide for the withholding of retainage.

As part of its summary judgment proof, Athens First submits the Supplemental Declaration of Scott Saarlas, who was employed as the project engineer or project manager by Whiting–Turner at the times relevant to this cause of action (Supplemental Aff. of Scott Saarlas (tab # 30), para. 2). The United States objects to this affidavit on the grounds that (1) the affidavit contains blanks in paragraph 5 which makes the remaining statements in the affidavit nonsensical; (2) there is no evidentiary foundation for the documents attached as exhibits; and (3) the exhibits do not appear to be what the affidavit asserts them to be (Reply of the United States to Athens First's Opp'n to Mot. for Summ. J. (tab # 40), p. 4). Although the Court agrees that paragraph 5, which is incomplete, lacks evidentiary value, the Court disagrees that the deficiencies of this paragraph make the remaining statements in the affidavit nonsensical. Similarly, the Court disagrees with the United States' contentions that there is no evidentiary foundation for the attached exhibits and that the documents do not appear to be what the affidavit asserts them to be. In paragraph 4 of the affidavit, Mr. Saarlas states that the exhibits attached to his affidavit are "true and correct copies" of the pay requests that Whiting–Turner received from PDH for work performed on the Project. The Court has examined the documents and, although documents other than the pay requests are included, the exhibits certainly appear to be what Mr. Saarlas asserts them to be. Thus, although the Court may decline to consider certain portions of the supplemental affidavit, the Court will disregard the assertion by the United States that the entire supplemental affidavit should not be considered for purposes of determining the motions for summary judgment.

Based on the exhibits attached to the Supplemental Affidavit of Scott Saarlas, Athens First argues that, at the time of the filing of the federal tax lien on January 31, 1997, Whiting–Turner owed PDH money for its performance under the Subcontract. PDH began performing its duties under the Subcontract on August 14, 1996 (Supplemental Aff. of Scott Saarlas (tab # 30), para. 3). Undoubtedly, as the Subcontract specifically provided that Whiting–Turner would withhold retainage from its payments to PDH, some amount of

money for work performed prior to January 31, 1997, was due and owing PDH at the time of the federal tax lien filing. The evidence that Athens First provided the Court with respect to the amount of payment earned by performance, but retained by Whiting–Turner, during the period from August 14, 1996 and January 31, 1997 shows that Whiting–Turner owed PDH $11,115.00 as of October 20, 1996 (Supplemental Aff. of Scott Saarlas (tab # 30), Exhibit C). Thus, an account existed as of October 20, 1996 because PDH had earned by performance a right to payment of $11,115.00 for services rendered as of this date.

Athens First also asserts an interest in the $19,801.73 in retainage owed to PDH as of March 12, 1997 (Supplemental Aff. of Scott Saarlas (tab # 30), Exhibit D; Brief of Athens First filed June 29, 1999 (tab # 36), p. 3). Given that Athens First refers to payments made within forty-five days of the filing of the tax lien, the Court assumes that Athens First is attempting to utilize the provisions of § 6323(c). 26 U.S.C. § 6323(c) provides as follows:

> (c) Protection for certain commercial transactions financing agreements, etc.-
> (1) In general.-To the extent provided in this subsection, even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which-
> (A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting-
> (i) a commercial transactions financing agreement, ... and
> (B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.

> (2) Commercial transactions financing agreement.-For purposes of this subsection-
> (A) Definition.-The term "commercial transactions financing agreement" means an agreement (entered into by a person in the course of his trade or business)-
> (i) to make loans to the taxpayer to be secured by commercial financing security acquired by the taxpayer in the ordinary course of his trade or business, ... but such an agreement shall be treated as coming within the term only to the extent that such loan or purchase is made before the 46th day after the date of tax lien filing or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax lien filing.
> (B) Limitation on qualified property.-The term "qualified property", when used with respect to a commercial transactions financing agreement, includes only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing.
> (C) Commercial financing security defined.-The term "commercial financing security means ... (ii) accounts receivable, ...."

■ Pursuant to § 6323(c), Athens First's security interest prevails as to any account for construction services rendered which became due and owing within 45 days after the tax lien filing. Prior to the tax lien filing, Athens First and PDH entered into several commercial transaction financing agreements. In these agreements, Athens First, in the ordinary course of its business as a bank, agreed to make loans to PDH to be secured by commercial financing security, which includes the accounts receivable acquired by PDH in the ordinary course of its business. Given that no loans or funds have been advanced to PDH since August 4, 1995,

Athens First made its loans before the 46th day after the date of tax lien filing. In addition, because PDH acquired the accounts receivable before the 46th day after the date of tax lien filing, the accounts receivable come under the statute's definition of qualified property. The retainage of $19,801.73 represents the amount of accounts receivable generated by the services performed by PDH within the forty-five days following the filing of the tax lien on January 31, 1997. Thus, Athens First's security interest in the accounts receivable takes priority over the federal tax lien on those accounts at least to the extent of $19,801.73.

With respect to the $19,801.73 owed to PDH as retainage, the parties do not address the effect, if any, of the conditional nature of this right to payment under the Subcontract. PDH was entitled to receive payment of the retainage amount only after completion and acceptance of the agreed upon work and following approval by the architect of the final application for payment provided that PDH fully performed all of its obligations under the Subcontract. The Court previously concluded that Athens First's security interest in the accounts receivable existed for purposes of the Federal Tax Lien Act when PDH performed the services giving rise to the accounts receivable. The Court now concludes that, even though the property subject to Athens First's security interest—the amount owing to PDH as of March 12, 1997—was subject to final calculation or computation, the property was still in existence within the meaning of the FTLA at that time. Thus, although the amount of money subject to Athens First's security interest could have been reduced or eliminated in the future, the fact that the amount payable had not been finally ascertained does not affect the existence of the right to payment.

This conclusion is in accord with the case law concerning the doctrine of choateness. Generally, in order for a competing lien to take priority over a federal tax lien, the competing lien must be established, or "choate," prior to the attachment of the federal lien. A lien is "choate" under the federal rule when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954). Athens First's security interest in PDH's accounts receivable satisfies these three requirements. First, the identity of the holder of the security interest (Athens First) was sufficiently established at the time of the tax lien filing. Second, the property subject to the security interest (PDH's right to the account receivable, or retainage, under the Subcontract) was established, even though the exact amount of the property itself—the precise value of the account receivable—had yet to be determined with complete accuracy. *See, e.g., Corigliano v. Catla Constr. Co.*, 231 F.Supp. 245, 248–49 (S.D.N.Y.1964) (concluding that "[a] state-created lien is not inchoate merely because the amount or value of the liened property has not been finally determined") (citing Brief for the Government at 6), *Crest Fin. Co. v. United States*, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342 (1961) (No. 325), *rev'g United States v. Crest Finance Co.*, 291 F.2d 1 (7th Cir.1961). Third, the amount of Athens First's interest (the amount of its loans to PDH) was fixed and specific. Thus, Athens First satisfied the three-part test for choateness with respect to its security interest at the time the IRS filed its notice of tax lien and within forty-five days thereafter.

■ However, a genuine issue of material fact, precluding summary judgment, remains as to the precise amount of the

accounts receivable generated by the services performed before and within the forty-five days following the filing of the first tax lien. The United States offers the declaration of Paul Dennis Hill, the president of PDH, in which he states that "[a]ll of the work performed by [PDH] for Whiting–Turner ... for which outstanding balances are due was performed after March 17, 1997, and before July 17, 1997" (Supplemental Decl. of Paul Dennis Hill (tab # 41), para. 6). However, the exhibits attached to the affidavit of Scott Saarlas clearly show that, as of March 12, 1997, Whiting–Turner owed PDH $19,801.73 in retainage. The Court is unable to determine from the evidence before the Court what amount, if any, of this $19,801.73 remains following the backcharges assessed by Whiting–Turner due to PDH's failure to complete and perform properly its obligations under the Subcontract. Accordingly, the cross-motions for summary judgment are hereby **DENIED.**

At this time, the Court does not consider a trial on this issue to be necessary. The total amount of funds deposited with the Court's registry is $26,330.14. The Court has determined in this order that Athens First may entitled to some amount of these funds less than or equal to $19,801.73. The United States is entitled to the remaining $6,528.41 of these funds in addition to any amounts that Athens First is not entitled to receive. If Athens First and the United States are able to reach an agreement as to the correct amount that each party should receive consistent with this decision, the Court will direct the disbursement of the funds in the agreed upon manner. If the parties are unable to agree within fifteen (15) days of the date of this order, the Court will consider motions for summary judgment on this issue. Athens First is directed to submit its motion and supporting evidence within fifteen (15) days of the termination of first fifteen (15) day period. The United States will then have fifteen (15) days from the date appearing on the certificate of service attached to Athens First's motion in which to respond.

## C. Validity of the Federal Tax Lien

Section 6323(f) governs the place of filing for tax lien notices and gives the Secretary of the Treasury the authority to prescribe the form and content of the notice, 26 U.S.C. § 6323(f)(3). Although the parties do not dispute that the notice was filed in the correct place and on the correct form, Athens First disputes whether the notice sufficiently identifies the taxpaying entity. The Treasury Regulation promulgated by the Secretary requires only that the notice of lien "must identify the taxpayer." Treas. Reg. § 301.6323(f)–1(d)(2). The notice of federal tax lien filed on January 31, 1997 identifies the taxpayer as "PD Hill Development Inc, a corporation DBA Phoenix Pipe & Dirt." Relying on the undisputed evidence that PDH is incorporated under the name of "P.D.H. Development, Inc." (Athens First's Mot. for Summ. J. (tab # 19), Exhibit AA), Athens First maintains that the tax lien is not valid because it was not filed against the proper corporate entity. The United States argues in response that the notice filed adequately identified the taxpayer.

In support of its argument, the United States relies on *Brightwell v. United States*, 805 F.Supp. 1464, 1471 (S.D.Ind. 1992), in which the district court stated that "lien notices ... need to comply only substantially, rather than perfectly, to convey adequate notice of a lien." Several courts have applied, with different results, this substantial compliance standard when considering whether a lien notice adequately identifies the taxpayer. Many courts have enforced liens after finding that there is an error in the taxpayer's name. *See, e.g., Kivel v. United States,*

878 F.2d 301 (9th Cir.1989) ("Bobbie Morgan" rather than "Bobbie Morgan Lane"); *United States v. Polk,* 822 F.2d 871 (9th Cir.1987) ("Roy Bruce Polk" rather than "Bruce Polk"); *Richter's Loan Co. v. United States,* 235 F.2d 753 (5th Cir.1956) ("Freidlander" rather than "Friedlander"); *Brightwell v. United States,* 805 F.Supp. 1464 (S.D.Ind.1992) ("William S. Va*n H* orn" rather than "William B. Va*nH* orn"); and *United States v. Sirico,* 247 F.Supp. 421 (S.D.N.Y.1965) ("Sirico, George" and "Sirico, A." rather than "Assunta Sirico"). Conversely, other courts have invalidated a federal tax lien where the IRS misspells or otherwise materially alters a taxpayer's name. *See, e.g., Fritschler, Pellino, Schrank & Rosen, S.C. v. United States,* 716 F.Supp. 1157 (E.D.Wis.1988) ("Allen G. Casey" rather than "Allen J. Casey"); *Haye v. United States,* 461 F.Supp. 1168 (C.D.Cal.1978) ("Castello" rather than "Castillo"); *United States v. Ruby Luggage Corp.,* 142 F.Supp. 701 (S.D.N.Y. 1954) ("Ruby Luggage Corp." rather than "S. Ruby Luggage Corp."); and *Continental Invs. v. U.S.,* 142 F.Supp. 542 (W.D.Tenn.1953) ("W.R. Clark, Sr." rather than "W.B. Clark, Sr.").

■ Many of the above listed cases rely on the language of § 6323(f)(4) which requires that, in the case of real property, the notice must be filed in such a manner that a reasonable inspection of the index will reveal the existence of the lien. In this case, a reasonable inspection of the Clarke County lien index would have revealed the existence of the federal tax lien. A certified copy of page 773 from the Clarke County Lien Index is attached to the Supplemental Declaration of Samuel W. Elliot as Exhibit C. The federal tax lien in the name of "PD HILL DEVELOPMENT INC" appears directly above a GED lien for "PDH DEVELOPMENT INC" on the same page. As these are the only two entries on the Lien Index under the name of "PD Hill" or "PDH," someone searching diligently under "PD Hill Development Inc." would be likely to notice an entry under "PDH Development Inc." In addition, even if there were multiple entries, the two names are sufficiently similar such that they would appear in close proximity on the Lien Index, which is arranged alphabetically. Because these two names are substantially identical, a reasonable searcher, noticing this similarity, would have looked at the lien notice and taken steps to discover the identity of the taxpayer. Thus, under the substantial compliance standard, the lien notice adequately identifies the taxpayer.

### CONCLUSION

Athens First's motions to strike the supplemental declarations are hereby **GRANTED** in part and **DENIED** in part. Athens First's motion for summary judgment is hereby **DENIED.** The United States motion for summary judgment is hereby **DENIED.**